# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

KENT MASHBURN,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　Civil Action
　　　　　vs.　　　　　　　　　　　　　)　　No. 08-3239-CV-S-JCE-SSA
　　　　　　　　　　　　　　　　　　　)
MICHAEL J. ASTRUE,　　　　　　　　　 )
Commissioner of Social Security,　　　　 )
　　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendant.　　　　　　　 )

## **O R D E R**

Plaintiff is appealing the final decision of the Secretary denying his application for disability insurance benefits ["DIB"] under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq., and for supplemental security income benefits ["SSI"] under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), this Court may review the final decisions of the Secretary. For the following reasons, the Secretary's decision will be reversed.

### Standard of Review

Judicial review of a disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197,

229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one position represents the Agency's findings, the Court must affirm the decision if it is supported on the record as a whole. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski. The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they

are inconsistent with the evidence in the record as a whole.  Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

## Discussion

Plaintiff, who was 45 at the hearing before the ALJ, has a high school education. He has past relevant work as a diesel mechanic.

At the hearing before the ALJ, plaintiff testified that he has a dislocated left shoulder.  He did not drive to the hearing, although he does have a driver's license.  He normally does not drive himself to errands or appointments because of cramping in the arms and hands.  Plaintiff states that he became disabled in January of 2004, which was about 2 ½ years before the hearing. He admitted that he tried to work after that, for six months or a year, sometime in 2004.  He left that job, because of problems with pain and stress, although he acknowledged that the company also had financial problems.  The medicine he takes for pain does not help, and the sleep medication does not provide restful sleep.  He is in the process of trying to get to a fibromyalgia clinic, but has yet to be approved.  Plaintiff testified that he has muscle and bone pain in his shoulders, knees, elbows, back and wrists.  To the best of his knowledge, this is from fibromyalgia.  The location of the pain varies from day to day.  He has knee pain daily, which he rates as a four on a ten-point scale, but no swelling.  He has constant pain in the low back, rated as a four, and daily pain in the neck, which he rates at a seven.  He has shoulder pain, which is worse on the right side, and which he rates at an eight.  He had his shoulder relocated by an orthopedic surgeon.  Plaintiff also has pain in his elbows, which is about a five on the pain scale. He has wrist pain daily, at about a three, and has numbness in his hands and fingers, which is affected by temperature.  Plaintiff testified that he has problems dropping things, and has

weakness in his hands. He can't hold anything very long. Lifting his arms or shoulders makes the pain in his shoulders worse; lifting of any objects of any cumulative weight hurts his low back and knee. He takes Soma for pain, which doesn't really help. Plaintiff also has muscle spasms or cramps in his hands, and the Soma sometimes helps with the spasms. He stated that the Soma is known to be addictive, in terms of side effects. Plaintiff also testified that he has sleep apnea. Because of sleeping problems and fatigue he takes one or two naps a day from 30 minutes to a couple of hours. He stated that he gets light-headed if he walks more than 30 minutes. He could probably stand thirty minutes, and sit less than thirty minutes before he would have to stand or stretch. He can lift five to ten pounds. He cannot usually get through the day without having to put his feet up, and they would probably have to be up for a couple of hours. Plaintiff had a seizure-type episode a few days before the hearing. He was just walking around, fell backward, hit his head, and had to be taken by ambulance to the emergency room where he got five staples in the back of his head. He has had other episodes of light-headedness where he gets weak. He usually knows when he doesn't feel well, but did not realize the problem at the time of the recent fall. He had not yet told his doctor about this incident. He thought he had an MRI that tested brain activity, but to his knowledge, no abnormality was found. Plaintiff testified that he has headaches that are bad enough to limit his activity, which occur two or three times a week. He takes anti-depressant and anti-anxiety medication, but did not think he had medication for his headaches. When he has a bad headache, he tries to relax by lying down for two or three hours. He stays with a friend in a modular home, and does very little housework and yard work. He does go to Alcoholics Anonymous once or twice a week, and sometimes has to get up and move around at the meetings because of pain. He goes grocery

shopping when he feels up to it, unless he is too weak or light-headed. Plaintiff does not have any hobbies, but does occasionally go to garage sales with his friend. If he doesn't feel well, he just doesn't get out of the vehicle.

Plaintiff still sees Dr. Simpson, a psychiatrist for "[a]nxiety, depression, bipolar." [Tr. 67]. He believes his depression is bad enough that it would interfere with his daily activities. He has daily problems with depression. When he feels like this, he tries to avoid people and any work at all. It affects his ability to be around and interact with people, and interferes with his concentration. He does not read for pleasure, and only watches a little television, but depression can interfere with his ability to concentrate on a television program. The medication he takes for anxiety helps sometimes, and other times, he "feels like escaping." [Tr. 68]. He has problems with fearfulness, bad enough to interfere with his activities. This happens two or three times a week; his approach is to sleep when this happens.

Christopher Dodge, a friend of plaintiff's, testified on his behalf. Plaintiff had been living with him approximately two and a half months at the time of hearing. He testified that plaintiff has not gone to garage sales on a consistent basis over the past two years, but rather, he has gone with him every now and then during the time they have lived together. He was there when plaintiff had the seizure, and observed him just falling back, and foaming at the mouth. He had to call 911. During the time that plaintiff has lived with him, he has not been able to do housework, even when asked, because he doesn't feel like it. Mr. Dodge noticed that plaintiff had a really good job nine years previously, but he lost it because his arms and hands were hurting so much that he couldn't work. In the past two and a half months, he has noticed him

having problems with his hands.  He asked him to vacuum and he couldn't; rather, he stayed in bed.  Mr. Dodge thought that plaintiff's depression would probably interfere with his activities.

  The ALJ found that plaintiff has not engaged in substantial work activity since the alleged onset date of disability, January 30, 2004.  She found that the medical evidence established that plaintiff has "fibromyalgia syndrome, also diagnosed as myalgias and myositis." [Tr. 23].  The ALJ found, additionally, that plaintiff's history of bipolar affective disorder with depression and alcoholism, and his history of sleep apnea, did not have more than a <u>de minimis</u> effect on his ability to perform substantial gainful activity on a sustained basis, and was therefore not severe.  She discounted the opinion of plaintiff's treating psychiatrist, finding it to be inconsistent with his treatment notes, and gave some weight to the opinion of a non-examining psychologist.  It was her opinion that plaintiff was not entirely credible.  It was her finding that plaintiff was unable to perform his past relevant work as a diesel mechanic, which he had performed for a number of years.  She found that plaintiff had the residual functional capacity ["RFC"] to perform a limited range of light work.  It was her finding that he could frequently lift and carry 10 pounds and occasionally lift and carry 20 pounds; that he could sit six to eight hours in an 8-hour day, and stand and walk six hours.  It was her finding that he cannot perform commercial driving, and should not be exposed to significant unprotected heights or potentially dangerous unguarded moving machinery because of possible limited mobility.  The ALJ also found that plaintiff should avoid extremes of cold and humidity.  "While he has no severe mental impairment, he may be distracted by medical conditions and symptoms and can perform only unskilled and semi-skilled work requiring the performance of simple to detailed, but not complex, tasks and job instructions." [Tr. 25].  These included the jobs delineated by the

vocational expert, such as small products assembler or office helper. Therefore, it was the ALJ's finding that plaintiff is not under a disability as defined by the Act.

Plaintiff contends that the ALJ's decision should be reversed because she failed to give controlling weight to the opinion of the treating psychiatrist, and failed to find that his mental impairments were severe. He also contends that the ALJ made an improper RFC determination, and erred in finding that plaintiff's testimony was not credible.

Plaintiff asserts, specifically, that the ALJ did not give any weight to the Medical Source Statement-Mental ["MSSM"] of Dr. Floyd Simpson, a treating psychiatrist, but rather, gave controlling weight to the opinion of a non-examining, government-paid medical consultant. He contends that the ALJ erred by not finding that plaintiff's mental impairments were severe. It is his position that he suffers from major depression and bipolar mood disorder, and that his mental disorders significantly predate the alleged onset date in this action. Plaintiff cites to the medical records, which indicate that he has been treated for depression with anxiety and insomnia since at least 1997. This condition has been variously described as chronic, severe, major, and recurrent. He has taken, at different times, Seroquel, Ativan, Lexapro, Soma, Wellbutrin, Prozac, and Trazodone. During the relevant time period, he was treated by Dr. Simpson. This treatment dated from December 31, 2004, to July 28, 2006. Plaintiff testified that he was still seeing Dr. Simpson at the time of the hearing.

A review of the record indicates that plaintiff had been treated regularly by Dr. Simpson for about a year and a half at the time of the hearing. When he saw him initially in December of 2004, he diagnosed plaintiff with Bipolar Mood Disorder. His treatment notes indicated that plaintiff, at the time of the examination, was "talkative and perhaps a little expansive." [Tr. 557].

7

The doctor found him to be "open-honest, and motivated for treatment." [Id.]. Plaintiff admitted to mood swings, racing thoughts, flights of ideas, and poor impulse control. He stated that he was likely to drink to slow himself down. He stated that when he is down, he withdraws and is anxious. He has had thoughts of suicide, and attempted suicide in 1989. Dr. Simpson noted that plaintiff stated he felt depressed most of the time. The doctor consistently prescribed anti-depressant and anti-anxiety medication, including Seroquel, Ativan, Lexapro, and Wellbutrin, as well as Soma for pain. His subsequent treatment notes, from January of 2005 through July of 2006, indicate that he saw plaintiff on a monthly basis. Dr. Simpson stated in a cover letter that "these records reflect an individual that is seriously stricken with a chronic mental illness. Affirmative comments should not be misconstrued to minimize the seriousness of the illness." [Tr. 590]. He further stated that, "[t]hese Progress Notes are not intended to defend the need for Disability or the confirmation of Disability. Instead the patient records are intended to reflect the progress of the course of treatment for a very serious and most likely life long illness." [Id.]. Through the course of the treatment notes, for appointments which appeared to last approximately 20 minutes, plaintiff discussed his physical and mental problems with his psychiatrist. He admitted to having good and bad days; to feeling that he was in too much pain to work; to being positive and hopeful; to being depressed and worried; and to have on-going, frequent problems sleeping. Plaintiff reported that the Lexapro was not working, and the doctor gave him Wellbutrin to try to augment the Lexapro. He also complained that the Seroquel helped him sleep, but then he did not awaken feeling rested. Later, he reported that it didn't seem to be working as well as it had. On another occasion, he reported that he had found a place to live, rather than the Victory Mission, had gotten Medicaid, was on his medications, and was

sleeping better. Later, he had more complaints of a great deal of trouble sleeping, and a pain medication, Soma, was added to the regimen. Plaintiff complained continuously about pain, stiffness, and problems sleeping. The next treatment notes indicate that plaintiff mentioned having contemplated suicide the week before, but "didn't because he didn't want to spend eternity in hell." [Tr. 596]. He also complained of anxiety and depression. Dr. Simpson added another medication, Ativan, to his treatment plan. The record indicates that plaintiff talked to the doctor about his problems with pain, sleeping, and psychological complaints, such as depression, hopelessness, and anxiety. Towards the end of the treatment notes available to the ALJ, plaintiff reported doing better, except for many physical complaints. The last entry indicated that he'd been in a fight, had a broken jaw, which was wired together, and a dislocated shoulder. On the MSSM, which was on a form prepared by plaintiff's counsel, "moderately limited" was defined as an "impairment which seriously interferes with, and in combination with one or more other restrictions assessed, will preclude the individual's ability to perform the designated activity on a regular and sustained basis." [Tr. 606]. "Markedly limited" was defined on the MSSM as an "impairment which clearly precludes the individual's ability to function independently, appropriately, and effectively in the designated area on a regular and sustained basis." [Id.]. Dr. Simpson found that plaintiff was moderately limited in his ability to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to work in coordination with or proximity to others without being unduly distracted; to complete a normal workday and workweek without interruptions from psychologically-based symptoms, and to perform at a consistent pace without an unreasonable

9

number and length of rest periods; to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and to respond appropriately to changes in the work setting. [Tr. 607-08]. He found that he was markedly limited in his ability to accept instructions and to respond appropriately to criticism from supervisors. Plaintiff argues that Dr. Simpson's MSSM imposed limitations that preclude all work.

Turning first to the weight given to the opinion of the treating physician, while a treating physician's opinions are ordinarily to be given substantial weight, they must be supported by medically acceptable clinical or diagnostic data, and must be consistent with substantial evidence in the record. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999); Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004). The ALJ may reject the opinion of any medical expert if it is inconsistent with the medical record as a whole. See Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995). In Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000), the Eighth Circuit Court of Appeals discussed the weight to be given to the opinions of treating physicians, holding that the opinion of a treating physician is accorded special deference under the Social Security regulations.

In this case, the ALJ dismissed the opinion of Dr. Simpson, who completed the MSSM in 2006, because she found that this opinion was inconsistent with his treatment notes. The ALJ, in giving no weight to Dr. Simpson's opinion, concluded that his treatment notes were inconsistent with his opinion because he did not recommend psychotherapy or hospitalization; that he did not make frequent changes in medication; that he did not recommend behavioral changes; and that he did not report severe symptoms of a mental disorder. A review of those treatment notes indicates, however, that the doctor, who diagnosed plaintiff with bipolar disorder and depression,

conducted at least a short therapy session with plaintiff each time he saw him; he stated on more than one occasion that he let plaintiff "ventilate." [Tr. 599, 603]. Further, he reported mood swings, depression, hopelessness, at least one suicidal ideation, and he changed or added medications after numerous appointments. The psychiatrist had seen plaintiff for a year and a half at the time of the hearing, and was still seeing him, which clearly constitutes an on-going, treating relationship.

Dr. Elissa Lewis, Ph.D., clinical psychologist, a non-treating, non-examining source, conducted a record review of the medical records for the agency. Her report was prepared on March 18, 2005, which was approximately 19 months before the hearing, and would have been without the benefit of most of Dr. Simpson's treatment notes. The record indicates that the ALJ gave some weight to the opinion of the non-examining medical expert, Dr. Lewis, to conclude that plaintiff's mental impairments caused only mild limitations in his activities of daily living, social functioning, and capacity for concentration, persistence, and pace.

In this case, the ALJ discounted the opinions of the treating medical specialist, and relied instead on the opinion of a non-examining source. After careful review, and given the fact that the totality of the record supports the conclusions of Dr. Simpson regarding plaintiff's mental limitations, the Court finds that the ALJ erred in the lack of weight afforded to this opinion. It is apparent that the record supports a finding that plaintiff has marked restrictions, which would impede his ability to maintain gainful employment. The Court finds that the ALJ did not give legally adequate reasons for the decision not to rely on the medically supported assessment of the degree of plaintiff's limitations by the treating psychiatrist. Under the Social Security regulations, the opinion of a treating physician is accorded special deference, and the ALJ may

only discount or disregard that opinion where there is better or more thorough medical evidence, or where a treating physician's opinion is so inconsistent that it undermines the credibility of such opinions. After reviewing the record as a whole, the Court finds that there was not substantial evidence to conclude that the opinions of Dr. Simpson were inconsistent with plaintiff's treatment records, otherwise inconsistent with other medical evidence of record, or inconsistent with the testimony adduced at the hearing. The ALJ erred in not giving appropriate weight to the opinions of Dr. Simpson.

Specifically regarding the RFC finding, an ALJ must determine the RFC, based on the medical evidence regarding the claimant's ability to function in the workplace. Stormo v. Barnhart, 377 F.3d 801, 807 (8th Cir. 2004). The ALJ should also consider "'all the evidence in the record' in determining the RFC, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Id. at 807 (quoting Krogmeier v. Barnhart, 294 F.3d 1019 (8th Cir. 2002). The plaintiff has the burden of producing documents to support his claimed RFC. Cox v. Apfel, 160 F.3d 1203, 1206 (8th Cir. 1998)). The ALJ, however, has the primary responsibility for making the RFC determination, and the Court is required to affirm that determination if it is supported by substantial evidence in the record as a whole. McKinney v. Apfel, 228 F.3d 860, 862 (8th Cir. 2000).

Plaintiff contends that the RFC determination is flawed because the ALJ did not specifically analyze plaintiff's complaints of pain, and that the ALJ erroneously concluded that plaintiff's bilateral epicondylitis, shoulder, and musculoskeletal spinal pathology were not severe. He asserts that he has been suffering with epicondylitis as a result of repetitive trauma while working as a diesel mechanic; and that his condition rendered his upper extremities

virtually useless. A review of the record indicates that plaintiff's severe bilateral epicondylitis was documented in 1998, which diagnosis was reiterated in 2004, by Ronald Evans, M.D., who diagnosed him with "chronic lateral epicondylitis." [Tr. 552]. This condition precluded the repetitive use of the elbows or wrists, including repetition from gripping or grasping. Plaintiff also testified about his pain level and problems with his elbows and wrists, and difficulty in holding onto things. The ALJ did not consider this condition in her RFC analysis. Based on a full review of the medical records in this case, the Court finds that there is not substantial evidence, in the record as a whole, to support the ALJ's RFC determination.

Based on the record before it, the Court finds that the ALJ's decision is not supported by substantial evidence in the record. The ALJ's findings that plaintiff's mental impairments were not severe, and that he was not disabled by severe physical impairments, are not adequately supported by the record as a whole. Accordingly, the decision of the Secretary should be reversed.

It is hereby

ORDERED that plaintiff's motion for judgment on the pleadings be, and it is hereby, granted. It is further

ORDERED that, pursuant to 42 U.S.C. Section 405(g), this matter be remanded to the Commissioner for the calculation and award of benefits.

/s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge

Date: 3/8/10